# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY WALKER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:14CV00321 AGF |
| | ) | |
| JAMES HURLEY, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the pro se petition of Missouri state prisoner

Timothy Walker for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was

convicted by a jury on May 14, 2009, of one count of first degree involuntary

manslaughter (driving while intoxicated) in violation of Missouri Revised Statutes

§ 565.024.1(3)(a).[1] He was sentenced to a term of 15 years of imprisonment. For federal

habeas relief, he raises several claims of trial court error and ineffective assistance of

---

[1]     At the time, § 565.024.1(3)(a) provided in relevant part as follows:

1. A person commits the crime of involuntary manslaughter in the first
degree if he or she:

(3) While in an intoxicated condition operates a motor vehicle in this state,
and, when so operating, acts with criminal negligence to:

   (a) Cause the death of any person not a passenger in the vehicle
   operated by the defendant, including the death of an individual that
   results from the defendant's vehicle leaving a highway . . . or the
   highway's right-of-way.

Mo. Rev. Stat. § 565.024.1(3)(a) (2006).

defense counsel and post-conviction counsel. He also claims that § 565.024.1(3)(a) (2006) was unconstitutionally vague. Respondent argues that the statutory claim was procedurally defaulted, and that, in any event, it and all other claims lack merit.[2] For the reasons set forth below, habeas relief will be denied.

## BACKGROUND

### Trial

The Missouri Court of Appeals described the evidence adduced at trial as follows. Upon review the record, this Court concludes that this is a fair summary of the evidence at trial, with this Court's additions following the summary.

> On April 13, 2007 around 12:30 a.m., Donald Gaither ("Gaither") was traveling westbound on Interstate 70 when he was struck and killed by a Corvette near the Blanchette Bridge [in St. Charles County]. Witnesses saw the Corvette strike Gaither's motorcycle and estimated the Corvette's speed at over 100 mph. There were two occupants in the Corvette [Defendant and Scott Fus], Defendant remained at the scene. The other occupant [Fus] fled the area, but was apprehended by law enforcement a short time after the crash. That individual had a blood smear on his neck; no blood was observed on Defendant. A dark [reddish brown] spot was visible on the driver side airbag in the Corvette. The spot was not tested to determine whether or not it was blood. Other motorists were in the area, but none of them saw who was driving the Corvette. Officer Dennis Navies ("Officer Navies") of the St. Louis County Police Department was the first officer on the scene [arriving five minutes after the collision]. He and a motorist at the scene observed Defendant get out of the driver's seat of the

---

[2] Respondent also argues that the petition is time barred under the one-year statute of limitation of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). The Court's calculations suggest that the petition is timely; however, rather than presenting an analysis of the statute of limitation issue, the Court will proceed to address Petitioner's claims. *See Trussell v. Bowersox,* 447 F.3d 588, 590 (8th Cir. 2006) (holding that a court may disregard an AEDPA statute of limitations issue in the interest of judicial economy because the issue does not constitute a jurisdictional bar to judicial review).

Corvette. Officer Navies observed that Defendant's legs were wobbly and that he appeared to be about to fall over. Defendant told Officer Navies that he had hit something, but he did not know what. Defendant also complained of seatbelt injuries. Officer Navies could smell alcohol on Defendant's breath. Defendant told Officer Navies that he had some beer earlier in the night. Officer Navies also observed that Defendant's eyes were glassy and his pupils were dilated.

When Trooper David Dengis ("Tropper Dengis") of the Missouri Highway Patrol arrived, Officer Navies walked Defendant over to him and told Trooper Dengis that he believed Defendant was intoxicated. Defendant approached Trooper Dengis and Trooper Dengis noticed that Defendant was swaying and stumbling, that Defendant's eyes were glassy and bloodshot, and that Defendant's speech was slurred and confused. Trooper Dengis also smelled a strong odor of intoxicants. A second trooper on the scene, Trooper Matthew Schmidt, also made similar observations. When Trooper Dengis asked for Defendant's identification, Defendant stated that he left it at a bar. Defendant further stated that he had consumed four or five beers and a shot.

Officer Dean Meyer ("Officer Meyer") of the St. Charles Police Department arrived at the scene of the accident and was asked by Trooper Dengis to watch Defendant. Defendant told Officer Meyer that he had been traveling the speed limit and that the motorcycle cut in front of him. Defendant further stated that he had been out drinking, but did not feel intoxicated. Defendant originally stated that he did not need medical treatment, but eventually asked to go to the hospital. Officer Meyer followed the ambulance to the hospital, and waited outside Defendant's room at the nurses' station.

Trooper Dengis arrived at the hospital a short time later, administered a horizontal gaze nystagmus test, and observed indicators of intoxication in each of the six clues. Based on Defendant's performance on the test and his appearance at the scene of the crash, Trooper Dengis read Defendant his Miranda Rights, and placed him under arrest for driving while intoxicated. Trooper Dengis then asked Defendant questions from the alcohol influence report. Defendant stated that he had not consumed alcohol since the accident. Defendant also stated that he was the driver of the Corvette. Further, Defendant stated that he had started drinking at 7:30 p.m., had stopped at 11:00 p.m., and during that time he had consumed four beers and a shot. Defendant also admitted to having used marijuana within

the 72 hours prior to the accident, although he would not specify when. Trooper Dengis informed Defendant of his rights under the implied consent law, and Defendant refused to provide a blood sample.

At 3:43 a.m., a search warrant for Defendant's blood and urine was issued and Trooper Dengis served Defendant with the warrant at 4:30 a.m. Defendant stated the warrant was invalid due to his birthday being incorrect on the warrant by one day. Defendant continued to object to the warrant, but submitted after he was informed he would be restrained if necessary to execute the warrant. Based on the blood samples drawn, Defendant's blood alcohol level ("BAC") was between 0.148 and 0.188 at the time of the accident. Further, the blood and urine samples showed the presence of cocaine in Defendant's system.

Days later, a search warrant was obtained for the System Diagnostic Module ("SDM") from Defendant's Corvette. The SDM showed that five seconds before impact, Defendant was accelerating from 109 mph to, ultimately, 118 mph three seconds before impact. The SDM showed that Defendant began braking two seconds before impact and that one second prior to impact the Corvette was still traveling at 108 mph. In addition, the SDM indicated that the driver's seatbelt was not fastened. No Sheriff's Deputies participated in the execution of either search warrant.

Defendant was charged by an Amended Information with involuntary manslaughter in the first degree. At trial Defendant's argument was that he was not the driver. The jury returned a verdict finding Defendant guilty and he was sentenced to 15 years in prison.

*Missouri v. Walker*, No. ED93225 (Mo. Ct. App. Dec. 7, 2010) (ECF No. 13-16 at 1-4.)

To the above, the Court adds the following. The prosecutor stated without objection in opening and closing statements, and four witnesses testified, that Petitioner was indifferent to the victim's condition. More specifically, (1) Officer Navies testified without objection that Petitioner never asked what he hit and never said anything about the victim when Officer Navies escorted Petitioner away from the victim's uncovered body; (2) Officer Meyer testified without objection that Petitioner's question about the

condition of the victim "didn't seem to be a sincere type of request," and in comparison to other incidents, Petitioner seemed to lack genuine concern; (3) Trooper Dengis testified without objection that at the hospital, Petitioner "showed no emotion and no care for the victim whatsoever;" and with objection that was sustained, that Petitioner was giggling and laughing in the emergency room when his family and friends visited; and (4) Trooper Schmidt testified without objection that when he was with Petitioner 15 yards away from the victim's covered body, Petitioner never asked questions about the victim's condition or looked concerned.

The Court also adds that at trial Kathryn Biondo, R.N., a nurse who treated Petitioner at the hospital, testified as to the contents of the medical chart that she and an examining physician (whom she identified as Dr. Svancarek) created. The chart was admitted into evidence, but was not provided to this Court by Respondent. R.N. Biondo confirmed that she had marked Petitioner as the driver of the car, but she could not testify whether she was told this by Petitioner or by a paramedic who was at the scene. She also testified that she noted on the chart a chin laceration and a nasal injury, and that these injuries could have caused bleeding. R.N. Biondo testified that Dr. Svancarek's notes indicated clotted blood in Petitioner's nose, bruising in his right shoulder, and tenderness and seatbelt bruising, but that his notes did not specifically link the right shoulder pain to the seatbelt bruising.

Trooper Dengis testified that the examining doctor told him that Petitioner had bruising from a seatbelt. And a highway patrol officer read part of the "data limitations"

section of the Corvette SDM, which stated that if the vehicle's electrical system was compromised during a crash, the state of the driver's belt at the time of the collision might not be correctly reported. Lastly, the Court adds that Trooper Dengis testified that Petitioner told him "multiple times," at the scene and at the hospital, that he was the driver of the Corvette. ECF No. 13-9 at 70, 93, 97, 156-57.

The trial court denied defense counsel's request to instruct the jury on involuntary manslaughter in the second degree[3] as a lesser-included offense, on the basis that there was no evidence that Petitioner was not intoxicated, and no evidence that the cause of the victim's death was by any means other than operation of a motor vehicle. The court reasoned that if Petitioner was not the driver, he would be acquitted, not be found guilty of second degree involuntary manslaughter. ECF No. 13-10 at 181-90.

**<u>Direct Appeal</u>**

On direct appeal, Petitioner argued that the trial court erred in denying his motion to quash the search warrants and in admitting Petitioner's blood and urine samples and the SDM information from the Corvette, because the highway patrol officers who executed the search warrants did not have authority to do so under Missouri law, in that the warrants were applied for and executed without notice to or participation of the Sheriff of St. Charles County or his designee. This argument was based on Mo. Rev. Stat. § 542.286, which addresses the territorial jurisdiction of the judge, court, and officer

---

[3]      Under Missouri law at the time of the incident, the second degree involuntary manslaughter statute provided: "A person commits the crime of involuntary manslaughter in the second degree if he acts with criminal negligence to cause the death of any person." Mo. Rev. Stat. § 565.024.3 (2006).

executing a search warrant; and primarily, § 43.200, which, at the time of the incident, authorized the highway patrol to request that a prosecutor apply for a search warrant, but provided that the sheriff of the county "shall" be notified of the application and participate in its execution, which did not occur here for either warrant.

Petitioner's remaining arguments on direct appeal were that the trial court erred in admitting evidence regarding Petitioner's lack of remorse toward the victim, because this evidence was irrelevant and prejudicial; and in denying Petitioner's motion for acquittal at the close of the evidence, because the then-current first degree involuntary manslaughter statute, § 565.024.1(3)(a) (2006), was unconstitutionally vague as to whether leaving the highway or right-of-way was an element of the crime.[4]

The Missouri Court of Appeals denied Petitioner's first point, reasoning that the two statutes relied upon by Petitioner were not connected, and that even though the version of §43.200 in effect at the time of the incident contained the word "shall" with respect to a sheriff's participation, the statute was "directory" rather than "mandatory" because it did not state what results would follow in the event of a failure to comply with its terms. Thus, Petitioner had to show that he was prejudiced by such failure, which he did not do.

The second point, admission of evidence of lack of remorse and demeanor toward the victim, was denied on the ground that the issue was not properly preserved for appellate review, and there were no grounds for plain error. The appellate court reasoned

---

[4]    Petitioner raised a fourth claim in his appeal, but does not raise it in this habeas action.

7

that evidence of Petitioner's demeanor toward the victim tended to show that Petitioner was intoxicated, and was thus evidence relevant to the State's case. The appellate court further concluded that even if the evidence was prejudicial, its admission was harmless error because there was substantial evidence of Petitioner's guilt, including Petitioner admitting several times that he was the driver of the Corvette. The appellate court denied Petitioner's last argument, that the first degree involuntary manslaughter statute was unconstitutionally vague, because it was not raised at trial and therefore not properly preserved for review on appeal. The mandate of the Missouri Court of Appeals issued on February 16, 2011.

**State Postconviction Proceedings**

Petitioner raised numerous claims in an amended motion for post-conviction relief under Missouri Court Rule 29.15, prepared with the assistance of appointed counsel, including, by attachment, the claims Petitioner raised in his pro se motion. Included in those pro se claims was the claim that defense counsel was ineffective in failing to preserve for appellate review the issue of the constitutionality of § 565.024.1(3)(a)(2006). The motion court denied Petitioner's motion for an evidentiary hearing, and denied all of Petitioner's claims, including those in his pro se motion. ECF No. 13-18 at 65-71.

On appeal, Petitioner, with the assistance of counsel, only pursued three claims. As will be discussed below, this Court is procedurally barred from considering the other postconviction claims. The three postconviction claims properly before the Court are: (1) trial counsel was ineffective for failing to call as a witness Dr. Charles Hiatt, an

emergency room physician who examined Petitioner and allegedly would have testified that Petitioner's seatbelt bruising and right-shoulder pain were consistent with the wearing of a passenger's seat belt and not a driver's seat belt, at the time of the collision; (2) trial counsel was ineffective for failing to have the dark spot on the driver's airbag tested for DNA to determine if the substance was blood, and if so, whether the blood belonged to Petitioner or Fus; (3) direct appeal counsel was ineffective for failing to argue that the trial court erred in denying defense counsel's request for an instruction on second degree involuntary manslaughter as a lesser-included offense. ECF No. 13-19.

With respect to the first claim, the Missouri Court of Appeals concluded that Dr. Hiatt's purported testimony would have been cumulative of other evidence already presented (i.e., Petitioner's medical records, R.N. Biondo's testimony, Trooper Dengis' testimony, and the Corvette's SDM report) that failed to convince the jury that Petitioner was the passenger and not the driver of the Corvette. The appellate court further reasoned that even if trial counsel was ineffective for not having Dr. Hiatt testify, Petitioner was not prejudiced as there was overwhelming evidence of Petitioner's guilt.

The appellate court affirmed the rejection of second claim—ineffective assistance of defense counsel for failing to test the dark spot on the driver's airbag for DNA— holding that defense counsel's failure to have the dark spot tested "might well have been trial strategy." The court elaborated that defense counsel sought to argue that there was reasonable doubt about Petitioner's guilt, that is, that the State failed to prove that he was the driver, continuing as follows:

> Attempting to create a reasonable doubt is a reasonable trial strategy. Had the dark spot been tested, it might not have been blood, which would have eliminated the reasonable doubt argument that trial counsel used. It might have belonged to Movant. Assuming that it was blood and belonged to Fus, it would not automatically follow that it got on the airbag because he was the driver.

ECF No. 13-21 at 7.  The court held that, moreover, Petitioner was not prejudiced by this alleged ineffectiveness of defense counsel, because of the overwhelming evidence that Petitioner was the driver.

Lastly, the appellate court concluded that the trial court did not err in refusing to submit the instruction on second degree involuntary manslaughter requested by Petitioner as a lesser-included offense instruction.  The appellate court explained that "the substantive difference between the instructions for involuntary manslaughter in the first degree and involuntary manslaughter in the second degree was whether or not [Petitioner] was intoxicated.  As no reasonable juror could have concluded that Petitioner was not intoxicated, direct appeal counsel was not ineffective for failing to raise the "non-meritorious claim of error" with regard to the trial court's refusal to give a second-degree manslaughter instruction.  *Id*. at 12.

The Missouri Court of Appeals issued its postconviction decision on February 26, 2013.  On December 1, 2013, Petitioner filed a motion in state court to reopen his postconviction proceedings due to "abandonment" by direct appeal counsel in pursuing only three of the 12 claims of error that were raised in Petitioner's motion for a new trial; and by initial and appellate postconviction counsel in not pursuing all the claims in

Petitioner's pro se motion for postconviction relief. ECF No. 23-2. On December 11, 2013, the motion court denied Petitioner's motion to reopen the postconviction proceedings.

**Habeas Petition**

In the present action, deemed filed on February 1, 2014, Petitioner asserts that his constitutional rights were violated in the following ways: (1) the trial court erred in admitting Petitioner's blood, urine, and SDM information because the seizure of this evidence violated his Fourth Amendment rights as well as Mo. Rev. Stat. §43.200; (2) the trial court erred in admitting evidence regarding Petitioner's lack of remorse; (3) Mo. Rev. Stat. § 565.024.1 (2006) was unconstitutionally vague; (4) defense counsel was ineffective for failing to investigate and call Dr. Hiatt; (5) defense counsel was ineffective for failing to test the dark spot on the driver's side steering wheel airbag for DNA; (6) direct appeal counsel was ineffective for failing to raise a claim that the trial court erred in denying a lesser included offense instruction; and (7) through (10) direct appeal and postconviction counsel (both initial and appellate) "abandoned" Petitioner in the manner set forth in Petitioner's motion to reopen his state postconviction case.

Along with his petition for federal habeas relief, Petitioner, apparently unaware of the state court's December 11, 2013 denial of his motion to reopen his state postconviction proceedings, filed a motion for this Court to hold his present case in abeyance pending the state courts' decision on his motion to reopen. On July 30, 2014, Petitioner filed a motion in state court to reconsider the denial of his motion to reopen his

postconviction proceedings.  On August 6, 2014, the state trial court denied the motion to reconsider, and on September 8, 2014, Petitioner appealed that order to the Missouri Court of Appeals.  On September 22, 2014, while that appeal was pending, this Court denied Petitioner's motion for stay and abeyance.  As of the date of this Memorandum and Order, the appeal from the motion to reconsider has not been ruled on by the state court.  https://www.courts.mo.gov/casenet, Case No. 1111-CV03043.

## DISCUSSION

### Standard of Review

Where a claim has been adjudicated on the merits in state court, the AEDPA provides that application for a writ of habeas corpus cannot be granted unless the state court's adjudication:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result.  *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003); *Strong v. Roper*, 737 F.3d 506, 510 (8th Cir. 2013); *see also Glebe v. Frost*, 135 S. Ct. 429, 430 (2014).  A

state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Federal courts owe deference to the "ultimate legal conclusion reached" by a state court, "not merely the statement of reasons explaining the state court's decision." *Williams v. Roper,* 695 F.3d 825, 831 (8th Cir. 2012).

"[A] determination of a factual issue made by a State court shall be presumed to be correct," 28 U.S.C. § 2254(e)(1), and the petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Therefore, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citation omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### Admission of Seized Evidence

For the first time, Petitioner argues that the seizure of his blood and urine samples and the Corvette's SDM violated his Fourth Amendment rights. A Fourth Amendment claim is not cognizable on federal habeas review unless the state failed to provide "an opportunity for full and fair litigation of [the] claim." *Palmer v. Clarke*, 408 F.3d 423,

437 (8th Cir. 2005) (quoting *Stone v. Powell*, 428 U.S. 465, 494 (1976)).  Here, Petitioner does not claim, nor can he, that he did not have a fair opportunity to present his Fourth Amendment claim to the state courts.

Petitioner's claim challenging, under state statutory law, the seizure and admission of the seized evidence, is also without merit.  The state appellate court's interpretation of the then-current Mo. Rev. Stat. § 43.200 does not establish that Petitioner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254.  It is not the province of a federal habeas court to reexamine state court determinations on state law questions.  *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994); *Higgins v. Smith*, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition).

## Constitutionality of Mo. Rev. Stat. § 565.024.1 (2006)

Under Missouri law, a criminal defendant must raise the issue of the constitutionality of the statute of conviction to the trial court to preserve the issue for appellate review.  *State v. Newlon*, 216 S.W. 3d 180, 184 (Mo. Ct. App. 2007); *Mo. Highway & Transp. Comm'n v. Merritt*, 204 S.W. 3d 278, 284 (Mo. Ct. App. 2006). Here, Petitioner did not raise the matter of the purported unconstitutionality of § 565.024.1(3)(a) (2006) to the trial court, and this default was the basis of the state appellate court's rejection of the claim on direct appeal.

Under the doctrine of procedural default, a federal habeas court is barred from considering a claim that a state court rejected on independent and adequate state grounds, unless the petitioner establishes cause for the default and actual prejudice resulting from the alleged violation of federal law, or that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004). In order to rely on the actual-innocence exception to excuse a procedural default, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011).

Here, Petitioner asserts in his traverse that the "abandonment of counsel" claims presented to the state court in Petitioner's motion to reopen the postconviction proceedings establish cause for the procedural default. Petitioner relies on *Martinez v. Ryan*, 566 U.S. 1 (2012), which held that ineffective assistance by counsel at the "initial-review [state] collateral proceedings may establish cause for a petitioner's procedural default of a claim of ineffective assistance at trial" where "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one . . . " *Martinez*, 566 U.S. at 9, 14. But *Martinez* limited, on its face, its application to an ineffective assistance of trial counsel claim. *See Dansby v. Hobbs*, 766 F.3d 809, 833 (8th Cir. 2014); *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013). Here, Petitioner's habeas claim at issue challenges the constitutionality of a state statute, not trial counsel's ineffectiveness. Thus, *Martinez*

15

does not avail him.  *See Courtright v. Rozum*, No. CV 13-1551, 2016 WL 1257466, at *1 n.1 (E.D. Pa. Mar. 31, 2016); *McCreless v. Sec'y of FL Dep't of Corr.*, No. 3:12CV414/RV/CJK, 2015 WL 265334, at *7 (N.D. Fla. Jan. 21, 2015).   And Petitioner has not invoked, nor can he on the facts of this case, the actual-innocence exception to the procedural default doctrine.  In sum, this Court is procedurally barred from considering Petitioner's claim that that § 565.024.1(3)(a) (2006) is unconstitutionally vague.

**Admission of Evidence of Plaintiff's Lack of Concern for the Victim**

As noted above, the only objection raised at trial to evidence of Petitioner's lack of concern for the victim (or to the prosecutor's opening and closing statement noting Plaintiff's lack of concern) was sustained.  The state appellate court held on direct appeal that Plaintiff therefore did not preserve his claim for appellate review.   On plain error review, the appellate court determined that the challenged evidence was relevant to the issue of intoxication, and any error in its admission was harmless.  A Missouri state appellate court's plain error review of an unpreserved claim does not serve to excuse a procedural default.  *Clark v. Bertsch*, 780 F.3d 873, 876-77 (8th Cir. 2015) (resolving intra-circuit split).  Therefore, as Respondent argues, this Court is procedurally barred from considering this claim.

In the alternative, the Court concludes that admission of the evidence in question did not rise to the level of a due process violation.  Only evidentiary rulings by a state court that are "so grossly prejudicial that they fatally infect the entire trial, preventing it from being fundamentally fair, will justify habeas corpus relief."  *Henderson v. Norris*,

118 F.3d 1283, 1286 (8th Cir. 1997). To meet this standard, a petitioner must show a reasonable probability that the evidentiary errors affected the trial's outcome. *Meadows v. Delo*, 99 F.3d 280, 283 (8th Cir. 1996). Here, this standard was not met in light of the strong evidence of Petitioner's guilt. There is no reasonable probability that the evidence of Petitioner's lack of concern for the victim affected the outcome of the trial.

**Assistance of Trial and Direct Appeal Counsel**

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, a habeas petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Strickland*, 466 U.S. at 687. "Strickland's first prong sets a high bar. A defense lawyer navigating a criminal proceeding faces any number of choices about how best to make a client's case. The lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (quoting *Strickland*, 466 U.S. at 690).

"Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citations omitted). To show prejudice, a petitioner must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If a claim of ineffective assistance involves direct appeal counsel's failure to make a certain argument, a habeas petitioner must show that "there is a reasonable probability that the result of the direct appeal would have been different if the argument had been made." *Carter v. Bowersox*, 265 F.3d 705, 713-14 (8th Cir. 2001) (citation omitted).

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *See Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citation omitted). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2005). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

The Court concludes that the Missouri Court of Appeals' adjudication of Petitioner's claim that defense counsel was ineffective for failing to call Dr. Hiatt, whose purported testimony would have been that Petitioner's bruising was consistent with wearing a passenger's seat belt and not the driver's seatbelt at the time of the collision, was reasonable and is entitled to deference under § 2254(d), in light of the strong evidence that Petitioner was the driver of the car. This Court does not believe, as did the

state appellate court, that Dr. Hiatt's purported testimony would have been cumulative of other evidence. The evidence at trial did not directly connect Petitioner's right shoulder injury with seatbelt injuries. Furthermore, the Court believes the purported testimony would have been helpful to Plaintiff's case. Nevertheless, the Court cannot say that the state court's conclusion of lack of prejudice was legally or factually unreasonable. This is so because of the strong evidence that Petitioner was the driver of the Corvette, including his own admissions and the testimony of two witnesses that they saw Petitioner get out of the driver's seat after the collision.

The record also establishes that the Missouri Court of Appeals reasonably adjudicated Petitioner's claim that defense counsel was ineffective in failing to have the dark spot on the driver's airbag tested. Although there was no evidentiary hearing at which defense counsel testified, this Court concludes that the state appellate court's decision affirming denial of postconviction relief was not contrary to *Strickland*. Given R.N. Biondo's testimony that Petitioner's medical chart indicated injuries that could have caused bleeding, the dark spot on the driver's airbag might well have been Petitioner's. The state court's determination that defense counsel's failure to have the dark spot tested was reasonable trial strategy is, therefore, entitled to deference under § 2254(d). Nor was state appellate court's decision that Petitioner was not prejudiced by counsel's alleged deficiency an unreasonable application of *Strickland*.

Lastly, Petitioner asserts that direct appeal counsel was ineffective for failing to argue that the trial court erred in denying a lesser-included offense instruction for second

degree involuntary manslaughter.  Petitioner maintains that the state courts erred in concluding that there was no evidence to support a reasonable juror acquitting Petitioner of first degree manslaughter and convicting him of second degree manslaughter.  Petitioner argues that a reasonable juror could have found that Petitioner was not in an intoxicated condition at the time of the collision, and that his driving at an excessive speed was the sole cause of the collision.

Direct appeal counsel is not ineffective under *Strickland* for failing to raise a claim for which a petitioner could not have obtained relief.  *See, e.g., Burton v. Dormire*, 295 F.3d 839, 846 (8th Cir. 2002); *Anderson v. Luebbers*, No. 4:04CV574 TIA, 2007 WL 2860061, at *9 (E.D. Mo. Sept. 25, 2007).  Here, the Court concludes that the decision of the Missouri Court of Appeals that direct appeal counsel was not ineffective in failing to argue trial court error in not accepting Petitioner's instruction on second degree involuntary manslaughter was neither contrary to nor an unreasonable application of *Strickland*.  In light of the overwhelming evidence of Petitioner's intoxication at the time of the collision, the state appellate court's determination that the evidence did not warrant an instruction on second degree involuntary manslaughter was not factually or legally unreasonable.

## Claims of "Abandonment" by Direct Appeal and Postconviction Counsel

Petitioner's claims of "abandonment" by direct appeal and postconviction counsel are essentially claims of ineffective assistance of these attorneys for abandoning claims Petitioner wished to be pursued at various stages of the state court proceedings.  With

respect to direct appeal counsel, appellate counsel is expected to winnow the issues on appeal to highlight the most meritorious issues and eliminate the sure losers. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *see also Reese v. Delo*, 94 F.3d 1177, 1185 (8th Cir. 1996) (holding that counsel has discretion to abandon losing issues on appeal). An attorney's decision not to raise an unwinnable issue on appeal is an important strategic decision in competent appellate advocacy, and does not constitute ineffective assistance of appellate counsel. *Horne v. Trickey*, 895 F.2d 497, 500 (8th Cir. 1990). Here, even if this claim is properly before the Court, the Court is confident, upon review of the record, that the claim is without merit.

With respect to postconviction counsel, 28 U.S.C. § 2254(i) provides that "[t]he ineffectiveness or incompetence of counsel during . . . State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." *Gray v. Dormire*, No. 4:09CV1355 RWS (TIA), 2010 WL 597313, at *2 (E.D. Mo. Feb. 17, 2010); *see also Jennings v. Groose*, No. 4:94CV1349 CDP, 2015 WL 1475663, at *2 (E.D. Mo. Mar. 31, 2015).

## <u>CONCLUSION</u>

The Court concludes that Petitioner is not entitled to federal habeas relief. The Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2254(d)(2). *See Buck,* 137 S.

Ct. at 773 (standard for issuing a Certificate of Appealability) (citing *Miller–El v.*

*Cockrell*, 537 U.S. 322, 336 (2003)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Timothy Walker for a writ of

habeas corpus relief is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability shall not issue.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of March, 2017.